820 So.2d 1027 (2002)
F.G., The Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D01-3946.
District Court of Appeal of Florida, Fourth District.
July 3, 2002.
*1028 Ivan J. Kopas and Samuel D. Lopez, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
MAY, J.
A father appeals an adjudication of dependency of his minor child, T.C. He raises two issues: (1) whether his incarceration for ten years can serve as the basis for the *1029 adjudication; and (2) whether such a finding constitutes cruel and unusual punishment under the eighth amendment. For the reasons set forth below, we affirm.
The minor child was born in 1995. Three years later, the father was incarcerated and charged with armed cocaine trafficking and conspiracy to traffic in cocaine. In December, 1999, while the minor child was residing with his mother, her boyfriend, and her boyfriend's minor daughter, the State charged the mother with aggravated child abuse on her boyfriend's daughter. The Department of Children and Families [D C & F] placed T.C. in shelter care, alleging that he was at risk based upon the mother's alleged abuse of her boyfriend's daughter.
In January, 2000, the D C & F filed a Petition for Adjudication of Dependency as to the mother and the incarcerated father. As to the father, the petition alleged that T.C. had been neglected by the father by being "deprived of or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment, or the child is permitted to live in an environment when such deprivation or environment causes the child's physical mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired, in that the father has been incarcerated since October of 1998 for armed cocaine trafficking."
In April, 2000, the father was convicted and sentenced to ten years incarceration for the pending charges. The trial court subsequently adjudicated T.C. dependent as to the mother and placed him in the custody of the maternal grandmother.
The father contested the petition. He filed a memorandum in which he contended that prior to his arrest he had no criminal background, and that T.C. was not present during and had no knowledge of the father's criminal activity. The mother and father had separated before the father's arrest. Since the arrest, the father alleged that he continued to support T.C. through his father. T.C. was doing well, had no medical needs, and he spoke to T.C. weekly by phone. Notwithstanding the memorandum, there was no evidence to support these contentions.
The trial court entered a disposition order, which found that T.C. had been neglected by his father based upon the allegations set forth above. The order further found that the father had abandoned T.C. "in that the father makes no provision for the minor child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. In addition, the father, has been incarcerated since October of 1998 for armed cocaine trafficking." This order was signed on September 7, 2001.
Section 39.01(45), Florida Statutes (1999), explains that "neglect"
occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
Section 39.01, Florida Statutes (2001), defines "abandoned" as
a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations.... The incarceration of a parent, legal custodian, *1030 or caregiver responsible for a child's welfare may support a finding of abandonment.
The trial court found that the father's incarceration for ten years, coupled with the environment created by the mother's acts, constituted neglect and abandonment as defined by chapter 39.
The Florida Supreme Court has held that "incarceration does not, as a matter of law, constitute abandonment." W.T.J. v. E.W.R., 721 So.2d 723, 725 (Fla. 1998). Nevertheless, incarceration is a factor to be considered "together with other facts to determine whether clear and convincing evidence of abandonment exists." Id. Nevertheless, section 39.806(1)(d), Florida Statutes (2001), provides for termination of parental rights when the period of a parent's incarceration "will constitute a substantial portion of the period of time before the child will attain the age of 18 years." The Court has instructed us to "focus on all the circumstances surrounding the petition in each case." In the Interest of M.F. & M.F., 770 So.2d 1189, 1194 (Fla.2000).
Here, the father's incarceration alone did not motivate the D C & F to file a dependency action as the mother was able to care for the child. However, when the mother's conduct placed the child at risk, the father's inability to care for the child due to his long-term incarceration provided clear and convincing evidence of neglect and abandonment, pursuant to chapter 39. As the trial court found in a prior order, the child would be twelve years old by the time the father was released. "The totality of the circumstances and length of incarceration" rendered the father unable to care for the minor child on a daily basis. The trial court's findings are supported by competent substantial evidence.
As to the father's second issue, in which he argues that a finding of dependency under the facts of this case constitutes cruel and unusual punishment, we simply disagree. In doing so, we rely upon the Supreme Court's pronouncement in Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).
In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishmentthat is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a non-penal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature.
Id. at 96, 78 S.Ct. 590.
Chapter 39 is not a penal statute. Its purpose is "[t]o provide for the care, safety, and protection of children ...." § 39.001(1)(a), Fla. Stat. (1999). The disposition order does not punish the father. The sanctions imposed are for the purposes of another legitimate governmental purposethe safety and protection of the child. It reflects the court's protection of the child while work is done toward the stated goal to maintain and strengthen the family. There simply is no violation of the father's eighth amendment right against cruel and unusual punishment.
The disposition order is affirmed.
GUNTHER, and STEVENSON, JJ., concur.